IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

STEVEN ALVERSON,

        Plaintiff,

v.                                                                                                                                    CIV 18-0123 JB/KBM

WELLS FARGO BANK, N.A.,

        Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Defendant's Motion to Dismiss Plaintiff's Complaint (*Doc. 3*), filed February 9, 2018, Plaintiff's Motion to Strike Defendant's Motion to Dismiss (*Doc. 7*), filed February 15, 2018, and Plaintiff's Motion to Remand (*Doc. 8*), also filed February 15, 2018. Because Plaintiff's Motion to Strike seeks denial of Defendant's Motion to Dismiss, asserting that the Court is without subject matter jurisdiction to consider the motion, (*Doc. 18*), the Court construes it as a response to the Motion to Dismiss.[1] Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 12*. Having carefully reviewed the material portions of the record, the Court recommends that this case be remanded to the First Judicial District Court.

---

[1] Additionally, moving to strike a motion to dismiss is technically improper. "[O]nly material included in a 'pleading' may be the subject of a motion to strike, and courts have been unwilling to construe the term broadly. Motions, briefs, . . . memoranda, objections, or affidavits may not be attacked by a motion to strike." *N. New Mexicans Protecting Land Water & Rights v. United States*, No. 15cv0559 JB/LF, 2015 WL 8329509, at *7 (D.N.M. Dec. 4, 2015).

## I. Background and Procedural Posture

On January 5, 2018, *pro se* Plaintiff Steven Alverson ("Plaintiff" or "Mr. Alverson") filed a Complaint for Violations of the Unfair Practices Act in the First Judicial District Court, County of Santa Fe, State of New Mexico. *Doc. 1-1*. Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") removed the case to this Court on February 6, 2018, asserting diversity jurisdiction. *Doc. 1* at ¶ 4. In his Complaint, Plaintiff alleges that Defendant engaged in "unfair or deceptive trade practices" or "unconscionable trade practice" in violation of NMSA § 57-12-2 while attempting to collect a debt. *Doc. 1-1* at ¶ 2. More particularly, he contends that Defendant obtained a foreclosure judgment in a state court proceeding without informing that court that it "did not own or possess any pecuniary interest in the Note." *See, e.g.*, *Doc. 1-1* at ¶ 9. In his prayer for relief, Plaintiff asks the Court to "permanently enjoin Defendant from enforcing the foreclosure judgment and or in the alternative vacate said judgment, and or in the alternative restitution, and any and all remedies available under the principles of law and equity." *Doc. 1-1* at 18. The foreclosure judgment to which Plaintiff refers was obtained in an earlier state court action in the First Judicial District Court, cause number D-101-CV-2011-03297 ("the underlying foreclosure action"). *See Doc. 1-1*, ¶ 13 & Ex. B. The Court will take judicial notice of the First Judicial District Court's records in the underlying foreclosure action, *Wells Fargo Bank, N.A. v. Alverson*, case number D-101-CV-2011-03297, which is referenced by Plaintiff in his Complaint. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts in appropriate circumstances, may take notice of proceedings in other courts, both

within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

On May 8, 2014, the First Judicial District Court entered its Judgment, Decree of Foreclosure, Appointment of Special Master, and Order of Sale in the underlying foreclosure action, which involved real property located at 1301 Bartlet Court, Santa Fe, New Mexico ("the subject property"). *See Wells Fargo Bank, N.A. v. Alverson, First Judicial District, State of New Mexico,* D-101-CV-2011-03297 (May 8, 2014). The court reasoned therein that because Mr. Alverson, Plaintiff here, had "repeated[ly] fail[ed] to comply with [the] Court's orders and repeated[ly] fail[ed] to appear for Court hearings," a judgment in favor of Wells Fargo was warranted. *Doc. 3-1* at 6. The court also made findings that: (1) Mr. Alverson had executed and delivered to Wachovia Mortgage FSB a Fixed-Rate Mortgage Note, which was in default; (2) that Wells Fargo was "the successor in interest to Wachovia Mortgage FSB"; and (3) that Wells Fargo was "entitled to enforce all rights and remedies of the Lender and Mortgagee." *Id.* at ¶ 13-16. The court entered judgment against Mr. Alverson in favor of Wells Fargo for $745,244.84[2] plus attorney fees, costs, and interest. *Id.* at ¶ 21(B). It also appointed a Special Master to advertise and sell the subject property. *Id.* at ¶ 21(D).

Although Mr. Alverson did not appeal the foreclosure judgment, he moved the state court to vacate that judgment on April 8, 2015, pursuant to Rules 1-060(B) and 1-005, for failure to serve all parties and for lack of standing. *Doc. 3-1* at 13. Additionally,

---

[2] The Court reaches this figure by summating the following components of the state court judgment against Mr. Alverson: "The remaining principal balance of $586,518.45," "[a]ccrued interest in the amount of $130,324.50," "Corporate Advance Balance of $4,723.42," "Escrow Advance in the amount of $16,109.96," "Recording cost, inspection fee, and late fee in the amount of $1,254.43," and "Foreclosure fees and costs in the amount of $6,314.08." *Doc. 3-1* at ¶ 21(B).

he moved to dismiss the foreclosure complaint on June 16, 2015. *See Wells Fargo Bank, N.A. v. Alverson, First Judicial District, State of New Mexico,* D-101-CV-2011-03297 (June 16, 2015). The state court denied both post-judgment motions on December 2, 2016, and ordered that Wells Fargo "may immediately proceed with selecting and holding the foreclosure sale pursuant to the Judgment." *Doc. 3-1* at 25.

Plaintiff appealed the denial of his Rule 1-060 motion, unsuccessfully, to the New Mexico Court of Appeals. *Id.* at 29. The New Mexico Court of Appeals concluded that "the prudential standing requirement was waived in this case by [Mr. Alverson's] failure to timely appeal from the foreclosure judgment" and, further, that "standing cannot be the basis for . . . collateral attack." *Id.* at 30. The Court of Appeals also determined that the record did not support Mr. Alverson's contention that he did not receive notice of certain pleadings in the foreclosure action. *Doc. 3-1* at 31. Mr. Alverson petitioned for a writ of certiorari with the New Mexico Supreme Court; however, his petition was denied on November 28, 2017. *Id.* at 35.

Defendant now maintains in its Motion to Dismiss that the instant litigation is another "improper, continued attempt to re-litigate the State Court Action." *Doc. 3* at 3. It asks this Court to dismiss Plaintiff's Complaint on the following grounds: *res judicata*, collateral estoppel, the *Rooker-Feldman* doctrine, statute of limitation, and litigation privilege. *Doc. 3* at 4-10. Plaintiff, on the other hand, contends that this Court lacks subject matter jurisdiction over the case and requests remand to the First Judicial District Court. *Docs 7 & 8*. Ultimately, the Court agrees that remand is required, but not for the reasons asserted by Plaintiff.

## II. Legal Standards

### A. Motion to Remand Standard

Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332(a). When a plaintiff files in state court a civil action over which the federal district courts would have original jurisdiction based on diversity of citizenship, the defendant may remove that action to federal court, *see* 28 U.S.C. § 1441(a), provided no defendant is a citizen of the State in which such action is brought. § 1441(b).

In order to achieve complete diversity of citizenship, as § 1332(a) requires, "the citizenship of all defendants must be different from the citizenship of all plaintiffs." *See McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008). A person's domicile, the equivalent of state citizenship, is determined by their residence coupled with an intention to remain in the state indefinitely. *See Crowley v. Glaze*, 710 F.2d 676, 677-78 (10th Cir. 1983). "All national banking associations shall, for purposes of all other actions by or against them, be deemed citizens of the States in which they are respectively located." 28 U.S.C. § 1348. For purposes of Section 1348, a national bank "is a citizen of the State in which its main office, as set forth in its articles of association, is located." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).

"The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995), *abrogated on other grounds by Dart Cherokee Basin Operating Co., LLC v. Owen*, 135 S. Ct. 547

(2014). A removal notice must plausibly allege on its face that the amount-in-controversy requirement is met. *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 550. These allegations should be accepted when not contested by the plaintiff or questioned by the court. *Id.* However, when the plaintiff does contest the defendant's allegations upon removal, the defendant must prove its factual assertions as to the amount in controversy by a preponderance of the evidence. *Id.*

### B. Motion to Dismiss Standard

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts as true "all well-pleaded factual allegations in a complaint and views these allegations in the light most favorable to the plaintiff." *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009); *Morris v. City of Colorado Springs,* 666 F.3d 654, 660 (10th Cir. 2012). Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In order to survive a motion to dismiss brought under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 12(b)(1) also allows a party to raise the defense of the court's "lack of jurisdiction over the subject matter" by motion. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress." *Henry v. Office of Thrift Supervision,* 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).

6

### C. *Pro Se* Standard

"[A] *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009) (citations omitted). In *Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991), the Tenth Circuit stated:

> We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.

*Id.* at 1110. Even so, the court "will not supply additional factual allegations to round out a plaintiff's complaint or to construct a legal theory on a plaintiff's behalf." *Id.*

### III. Analysis

#### A. Motion to Remand

In his Motion to Remand, Plaintiff contends that this Court lacks diversity jurisdiction. Specifically, he argues that the amount in controversy is not in excess of $75,000, because he seeks only equitable relief in the form of an injunction. *Doc. 9* at 2. In contrast, Defendant maintains that the amount in controversy in this case easily exceeds $75,000, noting that it "is measured by the value of the object of the litigation." *Doc. 14* at 2 (quoting *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006)). According to Defendant, Plaintiff's attempt to vacate a state court monetary judgment, which exceeds $700,000, easily meets the jurisdictional threshold. *Id.* Additionally, Defendant notes that the New Mexico Unfair Practices Act, under which Plaintiff has asserted claims, provides for treble damages. *See id.*

7

Defendant's understanding of the amount in controversy in an injunctive relief case is more accurate. Indeed, the Tenth Circuit has adopted the "either viewpoint rule," which requires courts to consider, as the measure of the amount in controversy, either the value to the plaintiff *or* the cost to the defendant of injunctive and declaratory relief. *Lovell*, 466 F.3d at 897. Here, if the Court were to grant the injunctive relief that Plaintiff requests, it would foreclose any ability by Defendant to collect on the previous state court judgment against Plaintiff, which is in excess of $700,000, and it would also prevent the sale of the subject property. In short, the requested injunction would cost Defendant far more than $75,000. The Court is satisfied, even without reaching the issue of damages under the New Mexico Unfair Practices Act, that more than $75,000 is at issue in this case.

Plaintiff also maintains in his Motion to Remand that Defendant's Notice of Removal was untimely, because it was filed more than thirty days after service of process. *Doc. 9* at 3 (citing *Hamer v. Neighborhood Housing Service of Chicago*, 138 S. Ct. 13 (2017)). In response, Defendant insists that removal was timely, because "Wells Fargo has not been properly served." *Doc. 14* at 5. The Court again agrees with Defendant.

Formal service is required to trigger the thirty-day period for removal. *See Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 347 (1999). Rule 4 of the Federal Rules of Civil Procedure governs service of process on a corporation, partnership, or association. It provides, in pertinent part, that proper service upon such an entity must be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to

receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, the rule provides that service on a corporation or partnership may be performed "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A). Rule 4(e)(1), in turn, provides that service may be made in conformity with state law for serving summons. Under New Mexico Rule 1-004(G)(1), service upon a corporation or business entity may be made "by serving a copy of the process to an officer, a managing or general agent or to any other agent authorized by appointment, by law or by this rule to receive service of process." NMRA 1-004(G)(1).

Here, Plaintiff asserts that "service of process was properly served upon Erica Boren manager of the Rodeo Road branch of Wells Fargo Bank N.A. on January 5, 2018." *Doc. 9* at ¶ 7 (referencing Affidavit of Service, attached as Exhibit C to Motion to Remand). But the Return of Service indicates that on January 5, 2018, the Complaint and Summons were instead left with Carlos Casias, who the process server identified as an "authorized teller." *See id.* at 11. In his reply brief, Plaintiff clarifies that he addressed an envelope containing the Summons and Complaint to Ms. Boren but that it was Mr. Casias who ultimately accepted service. *Doc. 17* at 3.

Significantly, Plaintiff has not presented any information to demonstrate that Carlos Casias was in fact an officer, managing or general agent, or otherwise authorized to receive service of process. While the Court is not aware of any New Mexico authority addressing whether a bank teller could be considered an agent authorized to accept service under New Mexico Rule 1-004(G)(1), courts in other jurisdictions have determined that bank tellers are *not* authorized to accept service. *See, e.g., Bank of America N.A. v. Borenstein*, 39 So. 3d 500 (Fla. Dist. Ct. App. 2010)

(determining that a bank teller who indicated that she was authorized to accept service of process was not in fact authorized under Florida law to accept service of process); *Agha-Khan v. Wells Fargo Bank, N.A.*, No. 2:16-cv-02928 APG/PAL, 2017 WL 3749578, at *1 (D. Nev. Aug. 30, 2017) (setting aside a default judgment because a bank teller, rather than an officer, managing or general agent, or other authorized agent, was served with the complaint).

Defendant faults Plaintiff for failing to serve Wells Fargo's registered agent, Corporation Service Company. *Doc. 14* at 4. Plaintiff indicates in his reply brief that he *did* attempt to personally serve "Corporation Service Company at 123 East Marcy Street in Santa Fe New Mexico" but "found no such corporation at that address." *Doc. 17* at 3. Nevertheless, a failed attempt to personally serve a registered agent still fails to constitute proper service. Because Plaintiff has not demonstrated proper service under Federal Rule of Civil Procedure 4(h)(1)(B) or New Mexico Rule 1-004(G)(1), the Court recommends that Plaintiff's Motion to Remand on the basis of untimeliness be denied.

### B. The *Rooker-Feldman* Doctrine

In addition to the defenses of *res judicata*, collateral estoppel, the statute of limitation, and litigation privilege, Defendant also raises a jurisdictional issue in its Motion to Dismiss, when it contends that the *Rooker-Feldman* doctrine applies.[3] *Doc. 3* at 8. Plaintiff does not respond directly to Defendant's assertion of the *Rooker-Feldman*

---

[3] The *Rooker-Feldman* doctrine gets its name from two Supreme Court cases. In *Rooker v. Fidelity Trust Co.*, the Supreme Court ruled that the state court judgment in question could only be reversed or modified "in an appropriate and timely appellate proceeding." 263 U.S. 413, 415 (1923). The Court held that, "[u]nder the legislation of Congress, no court of the United States other than [the Supreme Court] could entertain a proceeding to reverse or modify the judgment . . . ." *Id.* at 416 (alteration added). In *District of Columbia Court of Appeals v. Feldman*, the Supreme Court held that district courts have no authority to review final judgments of state courts in judicial proceedings, but rather, federal "review of such judgments may be had only in [the Supreme Court]." 460 U.S. 462, 482 (1983) (alteration added).

doctrine, but instead urges the Court to "strike" Defendant's Motion to Dismiss on the basis that it lacks subject matter jurisdiction. *Doc. 7.*

While there appear to be multiple reasons why Plaintiff's claims are unmeritorious, the existence of subject-matter jurisdiction is a threshold inquiry that must precede any merits-based determination. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). For, if a district court lacks jurisdiction, it has no authority to rule on the merits of a plaintiff's claims. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006). Thus, if the *Rooker-Feldman* doctrine applies to Plaintiff's claims, the Court is precluded from considering the applicability of the doctrines of *res judicata* and collateral estoppel. *Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996) ("Where Rooker-Feldman applies, lower federal courts have no power to address other affirmative defenses, including res judicata.").

The *Rooker-Feldman* doctrine requires that state court judgments be appealed to the United States Supreme Court and prevents federal district courts from overturning them. Put another way, "*Rooker-Feldman* is a jurisdictional prohibition on lower federal courts exercising appellate jurisdiction over state-court judgments." *Campbell v. City of Spencer*, 682 F.3d 1278, 1281 (10th Cir. 2012). "[W]hen Congress vested the Supreme Court with appellate jurisdiction over state-court judgments, it implied that the lower federal courts lacked authority to review state-court judicial proceedings." *Id.*

The *Feldman* case not only prohibited direct review of state judgments by lower federal courts, it also "prohibited those federal courts from issuing any declaratory relief that is *inextricably intertwined* with the state court judgment." *Facio v. Jones*, 929 F.2d 541, 543 (10th Cir. 1991) (internal quotations and citations omitted) (emphasis added).

The Tenth Circuit grappled with the nuances of this doctrine in *Campbell* and made distinctions between cases where jurisdiction is prohibited by the doctrine and those where it is not. The court reasoned that "[w]hen the state-court judgment is not itself at issue, the [*Rooker-Feldman*] doctrine does not prohibit federal suits regarding the same subject matter, or even the same claims, as those presented in the state-court action." *Campbell*, 682 F.3d at 1281. According to the court, "the essential point is that barred claims are those complaining of injuries caused by state-court judgments." *Id.* at 1283. And "an element of the claim must be that the state court wrongfully entered its judgment." *Id.*

Applying the principles of the *Rooker-Feldman* doctrine to the instant matter, the Court is precluded from conducting an appellate review of the foreclosure judgment in the underlying foreclosure action. Yet, in his Complaint, Plaintiff asserts that false statements misled the First Judicial District Court into determining that Wells Fargo was entitled to enforce the Note and that payments were due from Plaintiff to Wells Fargo. *See, e.g.*, *Doc. 1-1* at ¶ ¶ 17, 41, 55. In other words, he claims that the First Judicial District Court erred when it entered its foreclosure judgment against him. Plaintiff now seeks relief in the form of a permanent injunction against enforcing the judgment, requiring the state court to vacate the judgment, or an award of restitution, presumably to to compensate him for the state court judgment. Plaintiff's claims fall squarely within the *Rooker-Feldman* doctrine.[4]

---

[4] Although some activity continues in the underlying foreclosure action, including post-judgment motions by Mr. Alverson and motions by Wells Fargo related to the substitution of the Special Master, *see Wells Fargo Bank, N.A. v. Alverson, First Judicial District, State of New Mexico,* D-101-CV-2011-03297, this Court nevertheless considers the foreclosure judgment sufficiently final for application of the *Rooker-Feldman* doctrine to Plaintiff's claims here. *See Dibble v. Wells Fargo Bank, N.A.*, 226 F. Supp. 3d 1226 (D.N.M. 2016). That is, the Court takes judicial

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court held:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284. Plaintiff invites this Court to review and reject the state-court judgment – an action explicitly prohibited by the *Rooker-Feldman* doctrine.

*Rooker-Feldman* also applies here because the state court judgment is inextricably intertwined with the relief sought by Plaintiff. To be sure, issuing a permanent injunction that prevents Defendant from enforcing the foreclosure judgment, vacating the foreclosure judgment, or awarding restitution to Plaintiff to compensate for the state court judgment against him would each effectively overturn the foreclosure judgment. *Feldman* specifically "prohibited . . . federal courts from issuing any declaratory relief that is inextricably intertwined with the state court judgment." *Facio,* 929 F.2d at 543 (internal quotations and citations omitted); *see also Ritter v. Ross*, 992 F.2d 750 (7th Cir. 1993) (determining that the Constitutional claims by plaintiffs in federal court, involving the loss of land in an earlier foreclosure proceeding in state court, were inextricably intertwined with the state court judgment such that the *Rooker-Feldman* doctrine applied).

---

notice that Mr. Alverson did not appeal the foreclosure judgment. Further, he appealed the district court's denial of his Rule 1-060 motion, unsuccessfully, to the New Mexico Court of Appeals, and the New Mexico Supreme Court denied his petition for certiorari. *See Wells Fargo Bank, N.A. v. Alverson, First Judicial District, State of New Mexico,* D-101-CV-2011-03297. As such, the highest state court in which review was available, *or in which Plaintiff sought review*, affirmed the foreclosure judgment below and nothing substantive is left to be resolved. *See Dibble*, 226 F. Supp. 3d at 1231 (citing *Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005)).

In sum, the Court has no authority to reverse, modify, or review a judgment issued by the First Judicial District Court in the underlying foreclosure action. Plaintiff's claims under the New Mexico Unfair Practices Act seeking to enjoin enforcement of the state court foreclosure judgment are barred by the *Rooker-Feldman* doctrine, and this Court therefore lacks subject matter jurisdiction over those claims.

It is not lost on this Court that it was Defendant, the same party who now asserts application of the *Rooker-Feldman* doctrine in its Motion to Dismiss, that removed the case to this Court and asserted diversity jurisdiction. Defendant's removal of this action has placed this Court in a predicament, whereby it is constrained by the *Rooker-Feldman* doctrine, a jurisdictional bar that is not waivable. *See Mann v. Colorado*, No. 07-cv-1044 WDM/KLM, 2008 WL 906046 at *6 (D. Colo. Mar. 31, 2008) (collecting cases in which courts determined that the *Rooker-Feldman* jurisdictional bar was not waivable); *Hachamovitch v. DeBuono*, 159 F.3d 687, 696 n.2 (2d Cir. 1998) ("[P]reclusion defenses are generally affirmative and can be waived; *Rooker-Feldman* is jurisdictional and cannot."). Because the doctrine concerns subject matter jurisdiction to hear a given case, it can be raised at any time, by either party or *sua sponte* by the Court. *Garry v. Geils*, 82 F.3d 1362, 1364 (7th Cir. 1996). Here, application of the doctrine was not raised by Plaintiff in his Motion to Remand, but by Defendant in its Motion to Dismiss.[5] That Defendant would prefer a dismissal of Plaintiff's claims on the merits is of no moment. This Court simply lacks jurisdiction to reach the merits of this

---

[5] In its Motion to Dismiss, Defendant suggests that although it removed this case and "thereby invok[ed] the federal court's jurisdiction, the state court from which the Complaint was removed would be equally bound to dismiss the Complaint on the grounds of comity and preclusion." *Doc. 3* at 9 n.2. Confusingly, Defendant both urges the Court to dismiss Plaintiff's Complaint in its entirety for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine, (*id.* at 9), and also to dismiss Plaintiff's claims on the merits pursuant to Federal Rule of Civil Procedure 12(b)(6).

14

case. *See Garry*, 82 F.3d at 1363 (reasoning that "where *Rooker-Feldman* applies, the res judicata claim must not be reached").

Further, because this case was removed by Defendant from state court, 28 U.S.C. § 1447 compels remand rather than dismissal. Section 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." 28 U.S.C. § 1447(c) (emphasis added). The plain language of Section 1447(c) gives a court "no discretion to dismiss rather than remand an action" removed from state court over which the court lacks subject matter jurisdiction. *Int'l Primate Prot. League v. Adm'r of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (internal quotation marks omitted). Although it strikes this Court as inefficient, the case must nevertheless be remanded for the state court's consideration of the defenses of *res judicata* and collateral estoppel.

Although Plaintiff does request the payment of costs and actual expenses incurred as a result of Defendant's removal, (*Doc. 7*), the Court declines to recommend that they be awarded, as remand is required apart from the bases asserted by Plaintiff in his Motion to Remand (*see Docs. 8 & 9*).

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss (*Doc. 3*) be denied to the extent that it seeks dismissal of Plaintiff's claims on the merits, that Plaintiff's Motion to Strike (*Doc. 7*) be denied, and that Plaintiff's Motion to Remand (*Doc. 8*) be denied to the extent that it seeks remand for failure to meet the jurisdictional threshold or for untimeliness;

**IT IS FURTHER RECOMMENDED** that Plaintiff's claims be remanded to the First Judicial District Court, County of Santa Fe, State of New Mexico for lack of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

_____
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**